# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# AT PIKEVILLE

**CIVIL ACTION NO. 04-347-DLB**

**RITA K. WHITAKER**                                                    **PLAINTIFF**

vs.                 **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. Plaintiff has also moved to include certain evidence in the administrative record. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence. The Court will also deny Plaintiff's motion to supplement the record, as the proffered evidence is not new.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rita K. Whitaker filed an application for supplemental security income (SSI) benefits on January 23, 2003. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge, which was held on November 21, 2003. The ALJ ordered post-hearing development and a supplemental hearing was held on April 21, 2004. The ALJ issued an unfavorable decision on July 29, 2004, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for review by letter dated September 20, 2004. The ALJ's

decision, therefore, stands as the final decision of the Commissioner.

Plaintiff, who was 37 years old at the time of the hearings, has a high school education and alleges an inability to work beginning on December 14, 2002, due to blood clots in her left leg, hypertension (high blood pressure), Type 2 diabetes, and an inability to use her left leg. At the hearings before the ALJ, Plaintiff, who stands five feet tall and weighs approximately 250 pounds, testified that she walks with an assistive device; has extreme pain in the left side of her body that originates in her leg and radiates into her hip and lower back; suffers from rheumatoid arthritis; and takes Lortab. She also indicated that she can walk approximately ten yards; stand in one place for less than five minutes; lift two and a half pounds; sit for approximately thirty minutes; cannot bend or stoop; and has limited use of her left hand and fingers due to pain and swelling.

Plaintiff filed the instant action on October 1, 2004. The matter has culminated in cross motions for summary judgment, which are now ripe for review. Also before the Court is Plaintiff's motion to include evidence that was omitted from the administrative transcript.

## II.  DISCUSSION

**A.     Motion to Include Evidence**

On April 28, 2005, Plaintiff filed a motion to "include evidence that was inadvertently omitted from the transcript of evidence." (Doc. #10). The evidence consisted of a one-page statement by Plaintiff's treating physician, Dr. Charles Hardin, dated June 6, 2004 and providing:

> I am the treating physician for Rita Whitaker; It [sic] is my medical opinion based upon reasonable medical probability that in order to assist her from having blood clots in her legs, I would recommend that she avoid prolonged standing as much as possible in order to assist in controlling future clotting.

2

Plaintiff contends that she submitted this evidence to ALJ Don Paris by way of facsimile on July 7, 2004.  She also alleges that the ALJ "did not consider this new and material evidence" when he rendered his denial decision on July 29, 2004.  In response, the Commissioner notes that the ALJ properly based his decision on the exhibits that had been filed of record.  Alternatively, the Commissioner argues that the Court may only consider the evidence in determining whether remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  According to the Commissioner, the Court may not consider the evidence in adjudicating the pending motions for summary judgment.  The Court agrees.

This Court's review is limited to the record that was before the ALJ.  Where, as here, the Appeals Council declined to review an ALJ's decision, and a claimant submits additional, post-hearing evidence for the district court's consideration, the court's only option is to remand the case to the ALJ.  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  Remand, however, is appropriate only in limited circumstances. The limited circumstances under which remand is permitted arise when the moving party establishes that: 1) new and material evidence is available, and 2) good cause exists for failing to incorporate the evidence into the record at the administrative level.  *Id*. at 695.

New evidence must be just that, new.  It cannot be cumulative of evidence already in the record.  *Robertson v. Shalala*, No. 95-5444, 1996 WL 384542, at *3 (6th Cir. July 8, 1996). Even a cursory review of Dr. Hardin's treatment notes reveals that the limitation on prolonged standing does not constitute "new" evidence.  For example, on December 31, 2002, Dr. Hardin noted that Plaintiff should avoid heavy lifting, frequent bending, and prolonged standing.  (Tr. 289).  Subsequent notes also indicate that Plaintiff was experiencing left leg pain and swelling - symptoms that were increased by prolonged

3

standing. (Tr. 285). The Court concludes, therefore, that Plaintiff is unable to establish that Dr. Hardin's June 23, 2004 statement is related to an issue that was not already fully considered by the ALJ. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980). Because this evidence is not new, remand is not appropriate. Accordingly, Plaintiff's motion to include Dr. Hardin's statement in the administrative record is hereby **denied**. The Court now turns to the ALJ's decision and the merits of Plaintiff's appeal.

**B.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At Steps 2 and 3, the ALJ found that Plaintiff's morbid obesity, phlebitis/thrombophlebitis in her left leg, and chronic low back pain constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a significant range of light work. Specifically, the ALJ found that Plaintiff can lift/carry twenty pounds occasionally, ten pounds frequently; stand/walk at least two hours in an eight-hour workday, but no longer than thirty minutes without interruption; and occasionally climb stairs/ramps, balance, stoop, crouch, kneel or crawl. She is unlimited in her ability to sit, but can never climb ladders/ropes/scaffolds; and must avoid hazards such as unprotected heights and moving machinery. Based upon that assessment, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a deli clerk. At Step 5, however, the ALJ found that there are jobs she can perform despite her limitations. This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**D.     Analysis**

5

Upon review of Plaintiff's motion for summary judgment, the Court has discerned what it believes are the errors alleged therein. Those errors - six in all - can be summarized as follows: 1) the ALJ erred in finding that Plaintiff's depression/inability to be in crowds is a non-severe impairment; 2) the ALJ failed to give her treating physician's opinion controlling weight and, instead, relied on the opinion of a consultative examiner; 3) the ALJ improperly discounted her subjective complaints of pain; 4) the hypothetical question posed to the VE failed to accurately portray her physical and mental impairments; 5) her RFC, as determined by the ALJ, failed to take into account her need to use a walker; and 6) the ALJ failed to consider her combination of impairments. The Court will address each argument in turn.

### 1. ALJ's finding of non-severe impairments

Plaintiff's first argument is that the ALJ erred in determining that her depression and fear of crowds does not constitute a severe impairment. Plaintiff alleges that based upon her testimony at the hearing, the ALJ should have, at the very least, ordered a consultative mental health examination to assess the severity of any alleged mental impairment. As evidence, Plaintiff points to her testimony that she gets depressed because she cannot do the things she used to, and she has some difficulty being around crowds. (Tr. 357-58). The ALJ noted that her depression is treated with Wellbutrin (Tr. 17), but at the hearing Plaintiff testified that she was not taking any medication for any mental health disorder. (Tr. 357). She also testified that she had not sought treatment for her depression, either on her own accord or on referral from Dr. Hardin. (Tr. 357). Other than her limited testimony at the hearing, there is no evidence that her depression or fear of crowds rises to the level of a severe impairment under the regulations. The Court concludes, therefore, that the ALJ

6

did not err in failing to order a consultative evaluation and/or finding that her depression, as well as her diabetes, hypertension, and GERD, constitute non-severe impairments. (Tr. 17).

> **2.      Alleged errors relating to Dr. Hardin**

Plaintiff's second error alleged generally concerns the ALJ's consideration of her treating physician's opinion. Specifically, Plaintiff argues that: 1) Dr. Hardin should have conducted any post-hearing consultative exam, and 2) the ALJ should have resolved any inconsistency or ambiguity in Dr. Hardin's treatment records and evaluation by recontacting him prior to rendering a decision. Plaintiff also argues that the ALJ erred in relying on the opinion of consultative examiner Dr. Jules Barefoot, whose opinion she claims is internally inconsistent.

At the first hearing, the ALJ informed Plaintiff and counsel at the outset that some post-hearing development would be necessary before he could render a decision. His cause for concern was apparent inconsistencies between Dr. Hardin's treatment notes and his physical RFC dated October 1, 2003. (Tr. 280-82). The ALJ, therefore, sent Plaintiff to Dr. Jules Barefoot for a consultative evaluation, at the agency's expense. On appeal, Plaintiff claims that pursuant to 20 C.F.R. § 404.1519h, Dr. Hardin should have performed any further evaluation. That regulation provides:

> When in our judgment your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, your treating source is ordinarily the preferred source.

*Id*. Plaintiff's reliance on section 404.1519h, however, is misplaced given that it was Dr.

7

Hardin's opinion that the ALJ found problematic.[1]  Indeed, the inconsistency that the ALJ sought to resolve via the consultative exam would have likely been exacerbated with Dr. Hardin presiding.  The Court, therefore, finds this argument without merit.

Plaintiff also argues that the ALJ was required to recontact Dr. Hardin to resolve any ambiguity in his opinions prior to issuing a written decision.  In support, Plaintiff relies on 20 C.F.R. § 404.1512(e),[2] which states:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician ....

*Id*.  Also applicable is section 416.927(c), which provides in pertinent part:

> (1) If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence.
> (2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.
> (3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or, if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of § 416.912 and 416.919 through 416.919h. *We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information.* We will consider any additional evidence we receive together with the evidence we already have.

*Id*. (emphasis added).  The ALJ's statement at the opening of the hearing indicated that the

---

[1] Though they are identical, the regulation applicable to this SSI claim is 20 C.F.R. § 416.919h.

[2] The applicable SSI regulation is 20 C.F.R. § 416.912.

evidence was inconsistent and, in order to reach a conclusion, additional evidence was needed.  Under those circumstances, it was within the ALJ's discretion to "ask [Plaintiff] to undergo a consultative examination at [the agency's] expense," *see id*., and the Court will not disturb that decision on appeal.  That the ALJ did not elect to request additional existing records, recontact Plaintiff's treating physician, or ask others for more information (i.e., pursue the other options under section 416.927(c)(3)) is not reversible error.

Finally, Plaintiff relies on what is commonly referred to as the "treating physician" rule.  Under that rule, opinions of treating physicians are entitled to controlling weight in social security disability proceedings if they are well supported by medical findings, and not contradicted by other evidence in the record, as determined by the ALJ.  20 C.F.R. § 416.927(d)(2);*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Where the ALJ fails to give a treating physician's opinion controlling weight, the regulations impose a strict procedural requirement - the ALJ must articulate "good reasons" for his/her decision.  This requirement applies even where a reviewing court finds that substantial evidence otherwise supports the ALJ's decision.  20 C.F.R. § 416.927(d)(2); *see Wilson*, 378 F.3d at 545 (6th Cir. 2004).

Throughout her motion, Plaintiff repeatedly implies that the ALJ was disinclined to accept Dr. Hardin's opinion.  She asserts that, instead and in error, the ALJ gave greater weight to the opinion of consultative examiner, Dr. Barefoot.  Plaintiff claims that "Barefoot's opinion is held totally and completely credible by the ALJ," despite being internally inconsistent.[3]  Upon review of the record, the Court concludes that the ALJ did not violate

---

[3]Plaintiff claims that Dr. Barefoot's opinion is inconsistent because it states that she requires use of a walker, but can occasionally climb and balance.  A review of Dr. Barefoot's written opinion

9

the treating physician rule in adopting the activity restrictions imposed by Dr. Barefoot, as opposed to Dr. Hardin. The ALJ stated in his written decision that Dr. Hardin's assessment of Plaintiff's functional limitations was not entirely consistent with his treatment notes.[4] Thus, the ALJ provided good reasons for rejecting Dr. Hardin's RFC.[5]

### 3. ALJ's consideration of Plaintiff's pain complaints

Plaintiff's third error alleged is that the ALJ discounted her subjective complaints of pain, and did not provide adequate reasons for doing so, in violation of SSR 96-7p. In *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), the Sixth Circuit formulated the following test for evaluating a claimant's subjective pain complaints:

> First, [the court] examine whether there is objective medical evidence of an underlying medical condition. If there is, [the court] then examine[s]: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id*. In this case, the ALJ determined that "the claimant has underlying impairments which

---

reveals that she concluded that Plaintiff's ability to move about over extended distances, as well as repetitively bend, squat, crawl, and climb does appear to be impaired. (Tr. 294). The Court concludes that Dr. Barefoot's written opinion and accompanying physical RFC indicate that she thoroughly considered Plaintiff's need to use a walker, and her opinions are not inconsistent.

[4]The treatment notes include restrictions on heavy lifting, bending/repetitive movements, and prolonged standing. (Tr. 283-89). The RFC is considerably more restrictive and indicates that Plaintiff can lift/carry 10-15 pounds frequently, 10 pounds occasionally; stand/walk and sit a total of 1 hour in an 8-hour workday, 30 minutes without interruption; and can never climb, balance, stoop, crouch, kneel, or crawl. In addition, her ability to reach, handle, and push/pull are limited. (Tr. 280-81).

[5]Plaintiff also makes much of the fact that consultative examiner Dr. Robert Brown repeatedly referred to as "he" in his RFC report. (Tr. 264). While the Court understands that Plaintiff may feel personally slighted by such a mistake, it cannot conclude that the mistake was, in any way, reflective of Dr. Brown's competence or merely an oversight. Whatever the reason, the Court is able to conclude that the ALJ ultimately rejected Dr. Brown's opinion in favor of Dr. Barefoot.

are established by objective medical evidence which may reasonably result in the symptoms alleged." (Tr. 18). The question, therefore, is whether there is substantial evidence to support the ALJ's conclusion that Plaintiff's allegations of disabling pain and significant limitation of function were "excessive, [and] not fully credible." (Tr. 19).

In considering Plaintiff's subjective allegations of pain and other symptoms, the ALJ looked to Social Security Ruling 96-7p and 20 C.F.R. § 416.929 for guidance. The general import of those regulations is that an ALJ must evaluate a claimant's subjective complaints of pain in conjunction with the other relevant evidence in the case record. In his written decision, the ALJ exhaustively recounted Plaintiff's testimony at the hearing. (Tr. 18-19). Noting limitation of function, but not to the degree Plaintiff alleged, the ALJ continued:

> She has come findings indicative of pain and discomfort, but has not been referred to a pain clinic. Further, she has a history of poor compliance with appointments. Her primary pain source is in her leg and this condition is supposed to resolve, and has gotten better over time.

(Tr. 19). Therefore, the ALJ gave Plaintiff's testimony little weight. The Court concludes that the ALJ complied with both of his duties - to examine Plaintiff's complaints in light of the record as a whole, and to give good reasons for rejecting Plaintiff's testimony. Thus, Plaintiff's third error alleged is also without merit.

### 4. Hypothetical question posed to vocational expert

Plaintiff's fourth error alleged is that the hypothetical question posed by the ALJ to the VE did not accurately reflect her limitations. Specifically, she claims that the ALJ "should have presented a hypothetical to the VE that included the inability to work without her leg being elevated." In support, Plaintiff relies on her own testimony at the hearing that she elevates her leg four or more hours each day (Tr. 372), as well as the testimony of the

11

VE that she would be incapable of competitive, full-time employment if she had to keep her leg so elevated. (Tr. 376). The ALJ expressly addressed and rejected this alleged limitation in his written decision, noting "[t]here is nothing in the medical record to support the assumption that the claimant must elevate her leg after her thrombosis has resolved." (Tr. 22). The Court agrees. Absent Plaintiff's testimony that her physicians advised her to elevate her leg, which the Court has been unable to corroborate, there is no other evidence to support such a limitation. Therefore, it was not error to omit it from the hypothetical posed to the VE.

### 5. ALJ's alleged failure to consider Plaintiff's use of a walker in determining her RFC

Plaintiff's fifth error alleged is that her RFC, as determined by the ALJ at Step 4 of the sequential evaluation, was flawed because it did not account for her need to use a walker. In support, she seizes on the ALJ's comment that "the walker was not prescribed by her physician, Dr. Hardin." (Tr. 19). The Court notes that the record is replete with documentation that Plaintiff ambulates with a walker. Nevertheless, the ALJ's failure to adopt the use of a walker as part of Plaintiff's RFC, and include it in the hypothetical to the VE, is not reversible error. In fact, on cross-examination Plaintiff's counsel asked the VE what effect, if any, the need to use a walker would have on the available work. (Tr. 377). The VE responded that Plaintiff would still be able to perform the full range of sedentary jobs cited as being available. (*Id.*). Therefore, the Court concludes that, assuming the ALJ's failure to incorporate the assistive device into the RFC was error, it was harmless and does not mandate reversal. *See Heston v. Comm'r of Social Security*, 245 F.3d 528, 535 (6th Cir. 2001).

### 6. Confined effect of plaintiff's impairments

Plaintiff's final error alleged is that the ALJ failed to consider the combined effect of her impairments. Specifically, she alleges that the ALJ failed to make any findings regarding the functional limitations associated with her "severe venous impairment." The ALJ's written decision itself, however, reveals that Plaintiff's position is untenable:

> I have concluded that *due to chronic low back pain, history of phlebitis[6] in her left lower extremity, as well as obesity*, the claimant is limited to occasionally lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds, to standing/walking at least two hours in an eight-hour day, but no longer than 30 minutes without interruption, but is not limited in sitting ....

(Tr. 20) (emphasis added). Contrary to her argument, the Court concludes that the ALJ carefully considered Plaintiff's history of blood clots in her legs and the functional limitations occasioned thereby. Plaintiff's final error alleged is similarly without merit.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #15) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

---

[6]The ALJ noted that phlebitis and thrombophlebitis were alternative diagnoses to Plaintiff's deep venous thrombosis in her left lower extremity. (Tr. 17).

Dated this 16th day of August, 2005.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-347-WhitakerMOO.wpd